OPINION OF THE COURT
Bernard Fuchs, J.
This is a summary proceeding to recover rent payable for the months of November, 1975 through January, 1977 at $60.80 per month or a total of $912. Respondent counterclaimed for breach of warranty of habitability and for punitive damages.
*1053 The jury returned a verdict of $425.88 on the petition and awarded respondent $145.88 on the counterclaim for breach of warranty in addition to punitive damages of $1,000. Petitioner has moved to set aside the $425.88 verdict on the petition as well as the verdict for punitive damages and to enter judgment on the petition for $912, the full amount of the rent claimed. There is no challenge to the $145.88 breach of warranty verdict for respondent.
Petitioner argues that the court should have directed a verdict awarding the full rent claimed in the petition because the tenant’s possession and nonpayment and the rent legally payable were all undisputed. Nowhere in petitioner’s oral argument or brief, however, is there any reference to the issue of demand. Under section 711 of the Real Property Actions and Proceedings Law a landlord may not recover any rent installment for which there has not been an oral demand or written three-day notice requiring payment or possession. (Fleisher v Wolff, 91 NYS2d 427.) Nothing in the authorities cited by petitioner argues to the contrary.
There was no evidence of any written notice and the evidence of oral demand was conflicting. The issue was therefore submitted to the jury. Its verdict of $425.88 amounts to seven months’ rent (the computation is off some 28 cents). The jury clearly denied petitioner a recovery for the other eight months’ rent on a finding of no demand.
Another ground is urged by petitioner for setting aside the verdict on the petition. The court did not charge the jury to specify the months for which it was awarding rent. No request for such a charge was ever submitted by petitioner either before summations, when a full opportunity was afforded, or after the charge was all but concluded, when counsel were again invited to be heard as to its content. It is therefore too late to charge that omission as an error requiring that the verdict be set aside. (CPLR 4110-b.)
The jury was instructed that it could assess punitive damages against petitioner if it found that his actions in withholding services and repairs were wanton and reckless or malicious. There was evidence that for the 15-month period in question and despite respondent’s many complaints, petitioner had provided no heat or hot water, leaving a broken boiler unrepaired; had twice denied access to boiler repairmen sent by the city authorities; kept the hallways dark, making passage through them possible only with a flashlight; failed to *1054 repair heavy leaks in the ceilings of two bedrooms and a foyer, requiring respondent to use buckets to prevent flooding; allowed debris and excrement to accumulate on hallway floors; did not replace mail boxes torn out by intruders but remaining in petitioner’s possession and otherwise withheld necessary services and maintenance. Respondent was the last tenant left in the building and the jury could have concluded from the evidence that petitioner’s conduct was maliciously designed to drive her out rather than permit her continued tenancy at the low controlled rent of $60.80 per month.
Petitioner argues, however, that the landlord-tenant relationship is contractual in nature and that punitive damages may not be awarded for breach of contractual obligations. (Wegman v Dairylea Coop., 50 AD2d 108; Trans-State Hay & Feed Corp. v Faberge, Inc., 42 AD2d 535, affd 35 NY2d 669; Gordon v Nationwide Mut. Ins. Co., 62 Misc 2d 689, affd 37 AD2d 265, revd on other grounds 30 NY2d 427, cert den 410 US 931; Kronish, Lieb, Shainswit, Weiner & Heilman v John J. Reynolds, Inc., 33 AD2d 366; 14 NY Jur, Damages, § 183.) The Court of Appeals has, nevertheless, sustained the award to a tenant of punitive damages against a landlord. (I. H. P. Corp. v 210 Cent. Park South Corp., 12 NY2d 329.)
Petitioner persuasively explains that decision by reference to the landlord’s aggravated tortious conduct of trespass by breaking in at night and the erection of barriers against the tenant’s access to the leased premises. Even so explained the I. H. P. case means, at the least, that a landlord’s breach of duty, when amounting to misconduct of sufficient magnitude and of the right nature may justify his punishment by an award of damages beyond his liability to compensate the tenant.
The purpose of punitive damages, as petitioner aptly points out, is to punish conduct which is morally culpable or actuated by evil and reprehensible motives. Such an award serves to deter a wrongdoer and others of like inclination from repetitions of the same or similar actions, and it tends to encourage prosecution of a claim by a victim who might not otherwise incur the expense or inconvenience of private action or support of criminal proceedings. (Walker v Sheldon, 10 NY2d 401.) The public benefit and a display of ethical indignation are among the ends of the policy to grant punitive damages. (Toomey v Farley, 2 NY2d 71.)
Is this policy limited to cases where the wrongdoer’s conduct
*1055 falls into the mold of some traditional tort? Compare Fittipaldi v Legassie (18 AD2d 331), which permitted exemplary damages for malicious and oppressive deprivation of union membership. The Appellate Division in Gordon v Nationwide Mut. Ins. Co. (supra) speaks of "quasi criminal” conduct rather than tort as an essential basis for punitive damages. And this principle has been applied to impose punitive damages in a negligent property damage case upon a defendant guilty of drunken driving. (Colligan v Fera, 76 Misc 2d 22.)
The evidence of petitioner’s willful misconduct included violations of section 37 of the Multiple Dwelling Law (unlighted hallways), section 78 (duty to repair, including the roof) and section 80 (duty to keep property clean). Section 304 of that statute denounces these forms of misconduct as criminal or "quasi criminal” (offenses). A crime or offense of this nature, committed maliciously or in wanton or reckless disregard of a tenant’s rights (which the jury found in the present case) provides ample justification for an award of punitive damages. (Kipsborough Realty Corp. v Goldbetter, 81 Misc 2d 1054.)
It is the unambiguous policy of this State to prevent the deterioration of residential structures and maintain our housing stock against the ever increasing menace of decay, neglect and abandonment. The present proceeding was brought in the Housing Part of this court. Under subdivision (c) of section 110 of the New York City Civil Court Act (which provides for that part) the court may "employ any remedy * * * or sanction authorized by law for the enforcement of housing standards, if it believes they will be more effective to accomplish compliance or to protect and promote the public interest”.
The remedy of punitive damages gives clear promise of serving effectively the policy of enforcing housing standards when the conduct which undermines them is malicious, wanton or reckless.
Motion denied. Judgment will be entered on the verdict. Ten-day stay.